**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spirit Master Funding X LLC, | No. CV-18-00957-PHX-DLR |
| Plaintiff, | **AMENDED ORDER**[1] |
| v. | |
| BCB Holdings Incorporated, et al., | |
| Defendants. | |

In 2015, Plaintiff Spirit Master Funding X, LLC ("Spirit"), as lessor, and Defendant BCB Holdings, Inc. ("BCB"), as lessee, entered a fifteen-year commercial lease for real property located in Denver, Colorado. The property comprises three separate parcels—1298 West Alameda ("1298"), 1330 West Alameda ("1330"), and 1373 West Nevada Place ("1373")—which were leased collectively for a single monthly rent. Defendants Nicholas Domenico and Frank DeHoff executed a guaranty for Spirit's benefit. BCB eventually defaulted on its payment obligations, and Domenico and DeHoff on their guaranties. Rather than cure the default, BCB vacated the property. Spirit then filed this action asserting that BCB breached the lease and Domenico and DeHoff breached their guaranties. While this case was pending, Spirit sold parcel 1298 for $1,100,000. Spirit received $1,016,201 in net proceeds from the sale. Parcels 1300 and 1373 remain unsold and unleased.[2]

---

[1] This order amends the Court's May 8, 2020 order (Doc. 68) at page 7, line 23 to reflect that Spirit provided the attorneys' fees documentation, not Defendants.

[2] Although Defendants claim on information and belief that Spirit also sold parcels 1300 and 1373, they provide no evidence of these sales, and Spirit's Asset Manager

At issue are two motions for summary judgment. Spirit seeks complete summary judgment in its favor (Doc. 63); Defendants, while not disputing liability, seek partial summary judgment on the availability of certain damages (Doc. 62). For the following reasons, the Court will grant Spirit's motion and deny Defendants' motion.

## I.  Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

## II. Discussion

BCB does not dispute that it breached the lease; Domenico and DeHoff do not dispute that they breached the guaranty. Defendants agree that they are liable to Spirit for

---

declares that the parcels remain unsold. Although at the pleading stage a party can allege facts on information and belief, summary judgment is the time for proof.

damages; they just disagree on how much. As Defendants put it, this is "fundamentally a mitigation of damages case." (Doc. 62 at 1.)

Spirit's economic expert calculates damages at $4,372,888, reflecting discount adjustments for the present value of the unpaid rent under the lease, less an offset for proceeds that Spirit received or expects to receive from the sale of parcel 1298. Defendants' economic expert calculated damages at $2,402,759 by utilizing a higher discount rate. For purposes of summary judgment, Spirit has accepted Defendants' calculation, thereby negating a potential factual dispute on that issue. Defendants agree that these damages are appropriate "*if* the Court finds that the Rent Acceleration Remedy is *enforceable* and that the sale of the property does not end the right to seek damages." (Doc. 65 at 6 (emphasis in original).) Defendants argue, however, that the Court should not enter judgment for this amount because (1) the rent acceleration provision is unenforceable and (2) Spirit's sale of a parcel 1298 terminated its right to seek damages for future rents. These arguments present questions of law, which the Court will address in turn.

**A. The rent acceleration provision is enforceable.**

Section 14.02 of the lease (which is governed by Colorado law) provides that, upon BCB's default, Spirit is "entitled to exercise, at its option, concurrently, successively, or in any combination, all remedies available at law or in equity, including, without limitation, any one or more" of 11 remedies enumerated in the lease. (Doc. 62-1 48-50.) Section 14.02(f) gives Spirit the right to "accelerate and recover from [BCB] all Rental and other Monetary Obligations due and owing and scheduled to become due and owing under this Lease both before and after the date of such breach for the entire original scheduled Lease Term." (*Id.* at 49.) Section 14.03 explains that all remedies in Section 14.02, subject to applicable law, "shall be cumulative and not exclusive of one another." (*Id.* at 50.)

Defendants argue that Section 14.02(f) is void because it does not contain express language that discounts the accelerated sums by fair rental value and present value of the property. Defendants cite cases in which Colorado courts have upheld acceleration clauses

that expressly required the lessor to mitigate damages and discount damages to present value. *See Robert A. McNeil Corp. v. Paul*, 757 P.2d 165, at 167 (Colo. App. 1988); *Emrich v. Joyce's Submarine Sandwiches, Inc.*, 751 P.2d 651, 652 (Colo. App. 1987); *GTM Invs. v. Depot, Inc.*, 694 P.2d 379, at 381 (Colo. App. 1984). Defendants extrapolate that a rent acceleration clause is a void penalty if it does not expressly account for these matters. This argument is misguided.

Damages under a rent acceleration provision in a commercial lease should place the lessor in the same position it would have occupied without a default, taking into account the lessor's duty to mitigate damages. *See La Casa Nino, Inc. v. Plaza Estaban,* 762 P.2d 669, 672 (Colo. 1988); *see also Schneiker v. Gordon,* 732 P.2d 603, 612 (Colo. 1987). A court may not award damages for breach of a commercial lease without allowing the lessee to establish an affirmative defense of avoidable consequences or duty to mitigate, and any such award must be reduced to present value regardless of whether the lease contemplates such application. *See Mining Equipment, Inc. v. Leadville Corp.*, 856 P.2d 81, 84-85 (Colo. App. 1993). That is, these common law principles are incorporated into a rent acceleration provision regardless of whether the provision explicitly requires the lessor to mitigate or discount damages to present value.

In *Mining Equipment*, for example, the Colorado Court of Appeals considered a commercial equipment lease under which the plaintiff lessor had recovered accelerated future rents. *Id.* at 84. The court remanded for a new trial on damages, holding that the trial court should have allowed the defaulting lessee to raise avoidable consequences and mitigation affirmative defenses. *Id.* Further, the court explained, "insofar as the court on remand determines that [the lessor] is authorized to recover future payments under the lease, those payments must be reduced to their present worth." *Id.* at 85. To reach this decision, the court did not rely on a lease provision expressly contemplating mitigation or present value. *Id.* at 84. Instead, these principles automatically were applied to the rent acceleration provision as a matter of law.

Likewise, in *First National Bank v. Dykstra* 684 P.2d 957 (Colo. App. 1984), the

Colorado Court of Appeals upheld an acceleration clause without discussing whether the lease expressly obliged the lessor to mitigate damages or discount damages to present value. The court held that the lessee remained liable for unpaid rent, late charges, and common area expenses until the lessor relet the premises because the lease expressly provided this remedy. *Id.* at 958-59. The court did not rely on express discounting language in the lease to conclude that the acceleration clause was enforceable.

Accordingly, Spirit is entitled to accelerate BCB's unpaid rents for the remainder of the lease term, but the damage award must account for Spirit's duty to mitigate damages and discount the future rents to present value. These common law principles are implicitly incorporated into the lease, which in any event provides that Spirit's remedies are subject to applicable law.

**B. The sale of parcel 1298 does not end Spirit's right to recover future rents.**

Next, Defendants contend that Spirit's sale of parcel 1298 terminates Spirit's right to accelerate future rents because Spirit can no longer mitigate damages. Defendants argue that Spirit is limited to its common law damages of unpaid rent and other monetary obligations between the date of default and the date Spirit contracted to sell parcel 1298.

The Court has found no Colorado case holding that a lessor may not mitigate by selling the property or a portion of the property, rather than reletting. To the contrary, in *La Casa Nino*, the Colorado Supreme Court said it was "erroneous" to interpret *Schneiker* to "mean that only proceeds received in the form of rent could be applied in mitigation of a lessor's damage." 762 P.2d at 672.

Defendants instead rely on three cases from Nebraska, New Jersey, and Georgia to support their argument that a lessor's sale of the property terminates its right to recover future rents from the defaulting lessee beyond the date of sale. Setting aside the fact that these cases do not apply Colorado law, Defendants' reliance is misplaced.

In *Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.*, the Nebraska Supreme Court held that a lessor may mitigate damages by "making reasonable efforts to relet the premises on the [lessee's] account, to sell the

property, or both." 905 N.W. 2d 644, 658 (2018).  The court further held that the lessor may normally recover unpaid rent and expenses from the time of the breach to when the sale of the property is completed. *Id.* However, considering the "specific facts presented," the court determined that the lessor's efforts to sell the property were unreasonable, in part because the lessor chose to sell the property to a buyer that was "'notorious for delays,' to the exclusion of pursuing other bona fide offers to lease the property." *Id.* at 659.  Here, however, Defendants have not challenged the reasonableness of Spirit's efforts to relet or sell the property.  Defendants have not argued, for example, that Spirit failed to adequately market the property, consider fair offers, timely complete the sale of parcel 1298, or attain a fair sale price.[3]

In *McGuire v. City of Jersey City*, the New Jersey Supreme Court held that the lessor's sale of the property satisfied his duty to mitigate damages arising from breach of the lease, but terminated his right to seek future damages for lost rental income after the time of sale, because "the sale price approximated the value of the future rentals." 593 A.2d 309, 313 (N.J. 2003).  The court explained that, because "the sale price of commercial real estate can be correlated to the present value of the property's future stream of rental income," the lessor's sale of the property compensates him for expected future rental income. *Id.* at 315.  Unlike *McGuire,* however, Spirit has not sold the entire property such that the sale price of parcel 1298 fully compensates Spirit for its lost income under the lease.

Finally, in *Noble v. Kerr*, the Georgia Court of Appeals held that, when a lessor notifies a defaulting lessee that he will attempt to relet the property or sell it and hold the lessee liable for any unpaid rents, the lease is not terminated until the date of the sale and the lessee remains liable for unpaid rents until the sale.  180 S.E.2d 601, 601 (Ga. Ct. App. 1971).  This case is inapposite, as the court did not discuss whether the sale price adequately

---

[3] Defendants mention that, after Spirit engaged its broker, Spirit received offers to buy or lease some or all parcels.  Defendants have not argued that it was unreasonable for Spirit to refuse these offers.  Defendants also acknowledge that a May 2019 contract for the sale of parcels 1300 and 1373 for $3.3 million "fell through because the buyer backed out" rather than through some fault of Spirit.  (Doc. 62 at 3.)

compensated the lessor for the value of future rents under the lease.

In sum, although Defendants are entitled to an offset for proceeds that Spirit received from the sale of parcel 1298 (which already is reflected in the damages calculation), the sale of only part of the property does not terminate Spirit's right to recover future rents.

### C. Attorneys' Fees and Costs

Lastly, Spirit asks the Court to award attorneys' fees in the amount of $238,199.50 and costs in the amount of $9,538.01 because the lease and guaranty allow Spirit to collect these fees and costs in the event of any judicial or other adversarial proceedings concerning the lease. Defendants argue that it is premature to award fees because Local Rule of Civil Procedure ("LRCiv") 54.2 requires Spirit to submit a separate fee application after entry of judgment. Spirit does not respond to this argument in its reply.

By its terms, LRCiv 54.2 does not apply when attorneys' fees are an element of damages. Under Colorado law, courts have discretion when deciding how to classify attorneys' fees and, depending on certain factors, such fees might properly be considered an element of damages. *See Butler v. Lembeck*, 182 P.3d 1185, 1189 (Colo. App. 2007). Neither party addresses how these fees should be classified. Moreover, although the lease is governed by Colorado law, Arizona law applies to the guaranty. In Arizona, "courts generally do not construe 'damages' to include attorneys' fees." *City Ctr. Exec. Plaza, LLC v. Jantzen*, 344 P.3d 339, 343 (Ariz. Ct. App. 2015) (collecting cases).

The Court exercises its discretion to require a LRCiv 54.2-compliant fee application prior to awarding fees for four reasons: (1) the law is somewhat unclear on whether attorneys' fees should be considered an element of damages in a case like this; (2) neither party has briefed this issue; (3) the fee request is substantial; and (4) although Spirit provides some documentation of the fees, it has not given the Court the type of task-based itemization LRCiv 54.2 contemplates, making it difficult for the Court to determine whether the fees are reasonable.

**IT IS ORDERED** that Defendants' motion for partial summary judgment (Doc. 62)

1  is **DENIED**.

2      **IT IS FURTHER ORDERED** that Spirit's motion for summary judgment (Doc.
3  63) is **GRANTED**.  The Clerk is directed to enter judgment in favor Spirit and against
4  Defendants in the amount of **$2,402,759**.  Spirit may separately apply for an award of
5  attorneys' fees in accordance with LRCiv 54.2.

6      Dated this 11th day of May, 2020.

                                      Douglas L. Rayes
                                      United States District Judge